IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AFFABLE SERVICES, LLC, | * |
| Plaintiff, | * |
| v. | *     Civil Case No. SAG-19-02877 |
| C-CARE LLC, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Affable Services, LLC ("Affable") filed suit against C-Care, LLC ("C-Care") and its President/CEO, Cornelius Grupp ("Grupp") (collectively, "Defendants"), alleging claims for breach of contract, tortious interference with contract, and declaratory judgment. ECF 2. Although the parties are still within their discovery period, Defendants have filed a motion for summary judgment, ECF 21. I have reviewed the motion, along with Affable's opposition and Defendants' reply. ECF 22, 23. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

I.     **FACTUAL BACKGROUND**

The facts described herein are viewed in the light most favorable to Affable, the non-moving party. Sonam Kunga, an immigrant who became a naturalized United States citizen, began working as a temporary employee at C-Care in 2001. ECF 22-8 ¶¶ 1-2. After about ten years of employment, the former President of C-Care suggested that Kunga form a company to "furnish temporary employees to C-Care." *Id.* ¶ 2. Kunga formed Affable, LLC as its sole owner, and in 2011, Affable and C-Care entered into an agreement for Affable to provide temporary staffing employees to C-Care. ECF 22-1 (agreement between Affable and C-Care); ECF 22-8 ¶ 2.

On August 22, 2017, Affable and C-Care executed a new contract for the provision of staffing services. ECF 21-1. The 2017 agreement provides, in relevant part:

> In the event that Affable performs well, as determined by C-Care in its sole and absolute discretion, then C-Care may provide Affable certain minimum number of hours, which Affable agrees to accept, based upon the following: If the weekly hours C-Care engages temporary labor are (1) below 2,000 hours, Affable will get a minimum of 75%; (2) between 2,501 and 4,000 hours, Affable will get a minimum of 60%; and (3) over 4,801, then Affable will get a minimum of 50%.

*Id.*, Customer Responsibilities, 3.C. The agreement further provides:

> The term of this Agreement shall be for a period of two (2) years from the above date, and shall automatically renew for successive two (2) year periods unless either party provides notice to the other party with at least one hundred and eighty (180) days' written notice prior to the expiration of the current term that it will not renew the Agreement. Either party may terminate this Agreement upon the other party's material breach and failure to cure within 30 days.

*Id.*, Term and Renewal.

Beginning in January, 2019, C-Care began hiring temporary employees from another staffing service, Randstad, and many former Affable employees signed on as Randstad employees. ECF 22-8 ¶ 7. On May 20, 2019, Affable's attorney wrote to C-Care and stated:

> Prior to May, 2019, C-Care was requesting 20 employees per shift from Randstad and in May requests increased to 30 employees per shift. Due to the unequal distribution, Randstad has been taking Affable's employees.

ECF 22-3. On May 28, 2019, Affable's attorney wrote again to say:

> Since I wrote the letter it is getting worse for Affable. On May 25, 2019 you required 70 employees and only 11 were assigned to Affable. On May 26, 2019 you required 31 employees for the day shift and only 1 was assigned to Affable.

ECF 22-4. On May 29, 2019, an attorney for C-Care responded, "Please be advised that C-Care has determined that Affable is not performing well, which it has a right to do in its sole and absolute discretion pursuant to Section 3 C of the Agreement. Because of this determination, C-Care will no longer be providing Affable with minimum hours as noted in the Agreement." ECF 22-5.

However, beginning on April 25, 2019, internal C-Care emails showed that C-Care was aware that large numbers of Affable employees were switching to work for Randstad. *See* ECF 22-6 (April 25, 2019 email "Starting Monday the number of Randstad employees per team will increase to 25 per shift. We have a large number of Affable employees moving to Randstad starting next week."); *Id.* (May 2, 2019 email, "Alright the number will now increase to 30 per team starting today. 62 Affable employees have applied to move to Randstad so we will have the majority of the same people (which is great) but they will be working for Randstad now."). On June 19, 2019, Grupp wrote to Kunga and stated:

> This letter is to inform you that as of Monday, June 17, 2019, C-Care will not require any staffing services to be supplied by Affable. Please make sure to inform any of your employees who were planning to report for duty to C-Care on Monday that they should not report for work. If and when C-Care desires additional staffing to be supplied by Affable, we will contact you. However, at this time we have no future plans to fulfill our staffing needs through Affable. As a final matter, I note that our August 22, 2017 agreement has renewed for an additional 2 year period. During the next two years, Affable will be required to provide us with services as specified in that agreement. However, we would be willing to allow an early termination of the agreement, effective as of July 1, 2019. If you are amenable to that early termination date, please send me an email to that effect. If not, I am providing you with this notice that we will not be renewing the agreement following its next expiration date.

ECF 21-2 (alterations in formatting). This lawsuit ensued.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving

party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

Defendants seek summary judgment on all three counts of the Complaint. Each is addressed below, with the breach of contract and declaratory judgment counts addressed together.

4

## A. Count Two: Tortious Interference With Contract Against Grupp

The Complaint alleges that, with knowledge of the terms of the agreement between C-Care and Affable, "Grupp intentionally, improperly, and with actual malice, induced C-Care to breach the Staffing Services Agreement by, among other things, actively assisting in the recruiting of Affable's employees." ECF 2 ¶ 31. Affable alleges that Grupp's intentional and improper actions caused C-Care to breach the agreement. *Id.* ¶ 32.

To prevail on a claim for tortious interference with contractual relations, a plaintiff must prove five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; (5) resulting damages to the plaintiff. *Ha Le v. Osuji*, 2018 WL 6016672, at *20 (Ct. Spec. App. Md. Nov. 16, 2018). In their Motion for Summary Judgment, Defendants correctly explain that Maryland law prohibits a claim for tortious interference with contract against a party to the contract, or its agent. ECF 21 at 5–6; *see also Blondell v. Littlepage*, 968 A.2d 678, 698 (Md. Ct. Spec. App. 2009) ("As a matter of law, a party to a contract cannot tortuously 'interfere' with his or her own contract."); *Bagwell v. Peninsula Regional Medical Center,* 106 Md. App. 470, 503 (1995) (stating the party to a contract "can, at most, breach it" and "Neither can an agent of the party to a contract, acting within the scope of the agency, 'interfere' with the contract.") (citing *Natural Design, Inc. v. The Rouse Co.*, 302 Md. 47, 71 (1984)). Affable does not contest Defendants' arguments, and provides no contrary authority for the Court's consideration. *See* ECF 22. Because Grupp's actions on behalf of C-Care cannot interfere with C-Care's own contract, summary judgment is appropriate on Count Two, which is the only claim asserted against Grupp.

### B. Breach of Contract/Declaratory Judgment Claims Against C-Care

Affable's claims against C-Care, at this early stage of the litigation, survive application of the summary judgment standard. Viewing all facts in the light most favorable to Affable, application of Maryland contract law reveals a genuine issue of material fact as to whether C-Care breached its obligations under the parties' agreement.

C-Care contends that the written agreement between the parties constitutes an unenforceable "illusory promise," because its plain language does not require C-Care to provide any business to Affable or make any use of Affable's employees. ECF 21 at 3 (stating, under the agreement's terms, C-Care "may" provide a certain number of hours to Affable's employees). C-Care is correct that, "[u]nder the objective law of contract interpretation, the Court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they intended for it to mean." *Langston v. Langston,* 366 Md. 490, 507 (2001), *abrogated on other grounds by Bienkowski v. Brooks*, 386 Md. 516 (2005). Thus, the argument that Kunda may have believed that the contract language required C-Care to provide a minimum amount of business to Affable for the entire contract period is unpersuasive.

The contract's arguably illusory language is not the end of the Court's inquiry, however. While illusory contracts can be unenforceable, *Cheek v. United Healthcare of the Mid-Atlantic, Inc.,* 378 Md. 139, 148 (2003), "courts generally 'prefer a construction [of a contract] which will make the contract effective rather than one which will make it illusory or unenforceable.'" *Questar Builders, Inc. v. CB Flooring, LLC,* 410 Md. 241, 272 (2009) (quoting *Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n*, 247 Md. 241, 247 (1967)). An implied restriction on the promisor's ability to perform renders a promise "not illusory," because the implied restriction "prevent[s] a party's promise from being performable merely at the whim of the promisor." *Questar Builders,*

410 Md. at 273 (quoting 2 CORBIN ON CONTRACTS, 5:28 (1995)).  Under Maryland law, then, a party allotted discretion under the terms of a contract is limited to exercising that discretion in accordance with its general obligations of good faith and fair dealing.  *Clancy v. King,* 405 Md. 541, 569 (2008) ("In matters of personal discretion in contract, the party with the discretion is limited to exercising that discretion in good faith.").

Considering C-Care's legal obligations, and viewing the facts in the light most favorable to Affable, there is a genuine issue of material fact as to whether C-Care acted in accordance with its obligations of good faith and fair dealing when it made the conclusory assertion that "C-Care has determined that Affable is not performing well." ECF 22-5.  That assertion is undermined, for example, by the emails suggesting C-Care actually wanted to retain the Affable employees, as employees of Randstad.  *See* ECF 22-6.  Indeed, C-Care has neither produced, nor identified evidence in the record that Affable was performing poorly. Furthermore, as discovery has not yet closed, Affable intends to elicit more information from C-Care employees, which may assist the Court in determining whether C-Care's conclusory assertion was made in good faith. *See* ECF 22 at 5–6. Summary judgment on the claims asserting breach of contract and declaratory judgment is therefore inappropriate at this stage of the proceedings. *See Pizzuto v. Smith*, 2014 WL 1648269, at *13 (N.D. W. Va. Apr. 23, 2014) (explaining that "summary judgment should not be granted lightly before discovery is completed").

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF 21, will be GRANTED as to Count Two against Grupp, and DENIED as to Counts One and Three against C-Care. A separate Order follows.


Dated: April 6, 2020                                         /s/
                                                     Stephanie A. Gallagher
                                                     United States District Judge